UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ILLURINA R. A.,<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 2:26-CV-1340-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her application for supplemental security income ("SSI").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in evaluating certain medical opinion evidence. Had the ALJ properly considered this medical opinion, the residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned United States Magistrate Judge. *See* Dkt. 2.

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**I. Procedural History**

Plaintiff filed her application for SSI on May 23, 2022, alleging disability as of March 2, 2021. Administrative Record ("AR") 66. Her claim was denied initially on October 21, 2022, and upon reconsideration on January 31, 2023. AR 66, 77. A hearing was held before ALJ Michael Mannes on March 21, 2024, AR 33, who issued a decision ("2024 decision") denying Plaintiff's claim on April 30, 2024. AR 17–27. The Appeals Council denied Plaintiff's request for review on June 27, 2024, making the 2024 decision the Commissioner's final decision subject to judicial review. AR 1.

In turn, Plaintiff filed a complaint with the United States District Court for the Western District of Washington, and on January 29, 2025, United States Magistrate Judge Brian A. Tsuchida entered an order reversing and remanding the 2024 decision pursuant to a stipulation by the parties. AR 792–93, 96–97. The Appeals Council remanded the case on February 21, 2025. AR 798. The matter came on for another hearing on November 12, 2025, before ALJ Cecilia LaCara ("the ALJ"), AR 743, who entered a decision denying Plaintiff's claim on December 19, 2025. AR 721–36. From this decision, Plaintiff filed another complaint with this Court on April 22, 2026, once again, seeking judicial review of the ALJ's decision denying benefits. Dkt. 5.

**II. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

## III. Discussion

Plaintiff argues that the ALJ erred in evaluating: (1) certain medical opinion evidence; and (2) her subjective symptom testimony. Dkt. 13 at 1.

### A. Medical Opinion Evidence

First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence offered by Dr. Widlan, Dr. Mulick, and PA-C Bozeman. Dkt. 13 at 3–16.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

i. *Dr. Widlan*

Dr. Widlan conducted a "Mental Residual Functional Capacity Assessment" of Plaintiff on March 18, 2024. AR 535. In Dr. Widlan's opinion, Plaintiff has "marked" limitations in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being distracted by them; (7) interact appropriately with the general public; accept

instructions and respond to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (10) respond appropriately to changes in the work setting, be aware of normal hazards[,] and take appropriate precautions; (11) to travel in unfamiliar places or use public transportation; and (12) tolerate normal levels of stress." AR 532–34. Dr. Widlan also found that Plaintiff had "extreme" limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. AR 533. The ALJ found Dr. Widlan's opinion was not persuasive. AR 733.

1. Supportability

As for supportability, first, the ALJ found Dr Widlan's opinion unsupported because Dr Widlan's "observations and findings were of [Plaintiff]'s subjective reports and presentation at this evaluation[,]" but Plaintiff's "self-reports are not entirely reliable[.]"[3] AR 733. The Ninth Circuit, albeit under the previous regulations for evaluating medical opinions, however, has held that it is improper for an ALJ to discredit a medical opinion "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints *and supports his ultimate opinion with his own observations*." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (emphasis added); *see also Tara B. v. Comm'r of Soc. Sec.*, No. C21-0332-SKV, 2023 WL 4946573, at * 3 (W.D. Wash. Aug. 3, 2023) (extending the Ninth Circuit's *Ryan*

[3] The Ninth Circuit has previously held that "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But *such is the nature of psychiatry*." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2023) (emphasis added). The mere fact that Dr. Widlan's opinion was based upon, in part, Plaintiff's self-reports, therefore, was not a valid basis to discount his opinion. *See id.* (observing *Ryan's* continuing validity in that "in the context of mental health evidence, a clinical interview and mental health evaluation 'are objective measures and cannot be discounted as a self report' ").

analysis to the evaluation of a post-2017 medical opinion and concluding that the ALJ "erred when she discounted [the examining physician's] opinion based in part on Plaintiff's subjective self-reporting, where [the examining physician] relied on objective procedures and tests as well in forming [their] opinion" about the claimant's functional limitations).

Plaintiff argues that "Dr. Widlan did not note concern regarding [the reliability of Plaintiff]'s reports and provided ample clinical observation and justification for his conclusions." Dkt. 13 at 6. Indeed, Dr. Widlan explicitly noted that Plaintiff "presented as credible" at her evaluation, AR 543, and his opinion was not based solely upon Plaintiff's subjective reports, but *also*, as the ALJ herself noted, Plaintiff's "*presentation at this evaluation*[,]" and, as will be discussed at greater length, *infra*, his clinical observations of Plaintiff at the evaluation. AR 733 (emphasis added). For this reason, as in *Tara B.*, the ALJ erred in discrediting Dr. Widlan's opinion as unsupported because he "relied on objective procedures and tests as well [as his own observations] in forming" his opinion about Plaintiff's limitations. *Tara B.*, 2023 WL 4946573, at *3.

Next, the ALJ found Dr. Widlan's opinion was "not supported by the examination of [Plaintiff], the findings documented during the evaluation, and the explanation within the evaluation itself." AR 733. Plaintiff argues that this finding "is refuted by [a] simple review of Dr. Widlan's opinions" which "documented a thorough clinical interview including the extensive history he elicited and his mental status examination" and "discussed [Plaintiff]'s symptoms as well as her limitations." Dkt. 13 at 4. The Court agrees.

In support of his opinion, Dr. Widlan noted many clinical observations, including that Plaintiff's "behavior was noteworthy for agitation[,]" she "exhibited general dysphoria, lethargy, and apathy. Her affect was flattened though congruent with her mood[.]" AR 542–43. He noted

that Plaintiff "struggled somewhat to identify specific time periods for life events using vague chronology[,]" she "appeared to have deficits in insight and judgment" based upon her response to a prompt, and "was unable to interpret a basic abstraction." AR 544. Dr. Widlan also noted that Plaintiff "exhibited concentration difficulties during the MSE. She clearly takes longer than an average-functioning individual to complete ADL's." *Id.*

As Plaintiff argues, Dr. Widlan "examined [Plaintiff] in this matter and amply supported his findings with his discussion and clinical findings." Dkt. 13 at 5. The Court agrees that the aforementioned clinical observations provide ample support for Dr. Widlan's opinion, and for this reason, concludes that the ALJ's finding that Dr. Widlan's opinion was unsupported was not supported by substantial evidence.[4]

2. <u>Consistency</u>

As for consistency, the ALJ found the opinion of "marked" and "extreme" limitations inconsistent with "other mental status examinations of record . . . that indicate *although she sometimes reported with anxious and depressed mood*," Plaintiff was also "alert, cooperative, and fully oriented with normal attention, perception, affect, speech behavior, thought content, cognition, memory, and judgment." AR 733 (emphasis added). Plaintiff argues that the ALJ "acknowledged notable findings such as that Plaintiff 'described herself as "depressed" ', and appeared agitated and depressed . . . [but] the ALJ highlighted the less notable findings[.]" Dkt. 13 at 6.

---

[4] In evaluating supportability, the ALJ also found that Dr. Widlan "only reviewed some evidence from 2022, not ongoing treatment records that confirm improvement, suggesting he was not fully aware of this longitudinal picture of [Plaintiff]'s subjective reports and presentation at this evaluation." *Id.* This finding, however, more accurately goes to the consistency of Dr. Widlan's opinion. *See Woods*, 32 F.4th at 791–92. Although the Ninth Circuit has instructed ALJ's to "endeavor to use these two terms of art—'consistent' and 'supported'—with precision[,]" the ALJ's failure to do so here is not dispositive. *Id.* at 793 n.4. Nonetheless, as will be discussed in the consistency discussion to follow, this finding is also not supported by substantial evidence, because subsequent treatment records do not "confirm improvement[,]" nor are they inconsistent with Dr. Widlan's opinion. *See infra* pp. 8–10.

The Ninth Circuit has held that an ALJ errs in discounting a medical opinion where their "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998). Here, as Plaintiff argues, the ALJ highlighted the less notable findings, by "cherry-pick[ing] some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Moreover, Plaintiff also argues that many of "the records cited to by the ALJ" for a finding of inconsistency, "do not contain MSE's at all[,]" and "contained reviews of systems performed by *non-mental health providers* attending to [Plaintiff]'s *physical health conditions*." Dkt. 13 at 7 (emphases added). Indeed, in reviewing the ALJ's proffered citations for a finding of an inconsistency with Dr. Widlan's opinion, many citations rest "upon an inference that cannot reasonably be drawn from the record[,]" that medical providers at medical appointments ostensibly unrelated to Plaintiff's mental health conditions would thoroughly document Plaintiff's functional limitations derivative of her mental health conditions. *See Widmark v. Barnhart*, 454 F.3d 1063, 1067–68 (9th Cir. 2006) (holding that "substantial evidence does not support" the ALJ's "second reason for rejecting [the doctor]'s opinion" because "no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, it is unreasonable to expect [the claimant's] examining physicians [to] under[take] a thorough range of motion of [the claimant's] right thumb."); *see also Swanson v. Bisignano*, No. 24-4926, 2025 WL 2779300, at *2 (9th Cir. Sep. 30, 2025) (holding that the ALJ erred in rejecting a medical opinion because the ALJ "d[id] not explain how these general observations [such as 'consistently alert and oriented' and 'normal

mood and affect'] . . . from physicians who were not evaluating [the claimant]'s mental health contradict [the medical] opinion" related to the claimant's mental health).

For example, Exhibit 3F/10–11, was for an office visit with "UW Medicine Roosevelt General Internal Medicine" and was "to establish primary care[,]" 3F/16 was for an "Xray Chest[,]" and 3F/18 was for "3-week f/u on cough and for pap, 2nd Pfizer [Covid vaccine] dose." AR 319, 324–27. Similarly, Exhibit 3F/37 was "for 6 week f/u on cough and Tdap booster[,]" 3F/50 was for "6-week f/u on intermittent [shortness of breath], wheezing, and chronic cough[,]" and at 3F/72, Plaintiff "presents to [follow-up] on chronic cough and wheezing." AR 345–46, 358–59, 381–82. Exhibit 8F/3-4 was for "fever, back pain, sore throat, and headache[.]" AR 442–45.[5]

The ALJ also found Exhibits 3F/34, 52, 73, 111, and 6F/4-5, were inconsistent with Dr. Widlan's opinion, but those treatment notes indicate that Plaintiff exhibited "[a]nxiety, [l]ow mood/depression[,]" "[a]djustment disorder with anxious mood[,]" and "[m]ood is anxious and depressed." AR 342–43, 361–62, 381–82, 419–20, 432–33. Exhibit 10F—which the ALJ also cites with no specificity—notes on page five that Plaintiff scored a PHQ-9 of "14" which falls into the "moderate" depression range. AR 465. Exhibit 14F is *Dr. Widlan's own opinion*; the ALJ has not explained how Dr. Widlan's opinion is inconsistent with *itself*. AR 542–46.

---

[5] The Court observes that in making this finding, the ALJ cites to Exhibits 11F and 18F, with no specific page references. AR 733. Exhibit 11F consists of fifty-four pages of medical records. AR 476–530. Exhibit 18F consists of ninety-five pages of medical records. AR 1024–1119. It is paramount that an ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sep. 22, 2022) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). These citations fail to set forth the ALJ's reasoning in a way that allows for meaningful review—particularly in light of evidence in these records indicating that Plaintiff "continues to experience anxiety and social isolation as a result of her past traumas." AR 487.

Other citations offered by the ALJ, for instance, Exhibit 1F/4-5 and Exhibit 17F/4-5, were for mental health evaluations, but nonetheless show that Plaintiff was "struggling with anxiety[,]" noted "severe, daily" depression and anxiety. AR 278–82, 1020–21. These medical opinions *also* opined "marked" and "severe" limitations in several areas of Plaintiff's mental functioning. AR 280, 1021. The ALJ has not explained how this evidence of "marked" and "severe" limitations in several categories of mental functioning is inconsistent with Dr. Widlan's opinion.

Finally, the ALJ also found Dr. Widlan's opinion inconsistent with Plaintiff's "activities of daily living" in that she "was able to shop, use public transportation, spend time with family, and lived in a shelter with others." AR 733.[6] Once again, it is unclear to the Court how these activities are inconsistent with Dr. Widlan's opinions or how they are transferrable to full-time employment in a competitive workplace. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (internal quotation marks and citation omitted) (observing that a claimant "need not vegetate in a dark room" in order to be eligible for benefits).

At bottom, the Court concludes that the ALJ's findings do not provide substantial evidence of an inconsistency with Dr. Widlan's opinion, and for this reason, the Court concludes that the ALJ erred in evaluating the medical opinion evidence offered by Dr. Widlan.

---

[6] The ALJ also found Dr. Widlan's opined limitations "inconsistent with [Plaintiff]'s March 2024 testimony in that she stated she was able to spend 8 hours online doing research on brain and mental health issues." AR 733. Plaintiff argues that "the current ALJ parroted the prior ALJ's misrepresentation of [Plaintiff's] activities, relying upon the same testimony at the earlier hearing [that] the first ALJ relied upon." Dkt. 13 at 8. Indeed, as Plaintiff further argues, when asked "in a given eight-hour day how long do you think you spend online[,]" Plaintiff responded "I would say that eight hours in times not straight." AR 52–53. In other words, Plaintiff testified that she is able to go online, but does not do so for eight straight hours. *Id.* Moreover, as Plaintiff argues, "such activity would appear quite unremarkable and does not contradict the limitations opined" by Dr. Widlan because it "would not reflect on [Plaintiff]'s ability to maintain a schedule or interact socially with others or maintain the pace necessary for employment, the focus of Dr. Widlan's assigned limitations." *Id.* at 9. For these reasons, the Court concludes that this finding does not provide substantial evidence of an inconsistency with Dr. Widlan's opinion.

*ii. Harmless Error Analysis*

Applying the harmless error analysis requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made " 'without regard to errors' that do not affect the parties' 'substantial rights.' " *Molina*, 674 F.3d at 1118–19 (citations omitted). Here, the Court concludes that, had the ALJ properly considered Dr. Widlan's opinion, Plaintiff's RFC may have included additional limitations, or the ultimate determination may have changed, because Dr. Widlan opined limitations that, if found persuasive, would constitute a finding of disability at Step Three. AR 542. For this reason, the Court concludes that the ALJ committed harmful error in evaluating the medical opinion evidence, and the proper disposition is to reverse and remand the matter for further proceedings consistent with this order.[7]

B. <u>Remaining Issues</u>

In light of this disposition, the Court need not address Plaintiff's remaining arguments regarding the medical opinion evidence or her subjective symptom testimony because the ALJ must re-evaluate the entire sequential evaluation process on remand, including all of the medical opinion evidence and Plaintiff's subjective symptom testimony. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC

[7] Plaintiff also seeks to have this matter remanded to a "different ALJ" because "ALJ LaCara is biased against claimants." Dkt. 13 at 18. Defendant argues that Plaintiff "must show that the ALJ's actions have been 'so extreme' as to 'display clear inability to render fair judgment.' " Dkt. 14 at 16 (citing *Liteky v. U.S.*, 510 U.S. 540, 551 (1994). Here, Plaintiff does not contend that the ALJ's actions met this standard, and for this reason, the Court declines to order that this matter be assigned to a different ALJ upon remand. Dkt. 13 at 18.

and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 22nd day of October, 2026.

David W. Christel
United States Magistrate Judge